UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                          Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

        D. Rojas                                                   N/A
      Deputy Clerk                                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:
      Not Present                                        Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING MOTION TO CONSOLIDATE CASES AND ADDRESSING APPOINTMENT OF LEAD PLAINTIFF AND PLAINTIFF'S COUNSEL (Docs. 37, 38, 42)**

Before the Court are three Motions, each requesting: (1) that *Eljon Lako et al v. Loandepot, Inc. et al*, Case No. 2:21-cv-01449-JLS-JDE ("the Lako Action") and *Adam Doban et al v. Loandepot, Inc. et al*, Case No. 8:21-cv-01513-JLS-JDE ("the Doban Action") be consolidated; (2) that the Court appoint a lead plaintiff in the consolidated action; and (3) that the Court appoint lead counsel for plaintiffs in the consolidated action.  (*See* LDI Mot., Doc. 37; LDI Mem., Doc. 37-1; Ismagilov Mot., Doc. 38; Ismagilov Mem., Doc. 39; LaFrano Mot., Doc. 42; LaFrano Mem., Doc. 43.)  Defendants have not opposed the Motions.  (*See* Non-Opp., Doc. 54.)  Plaintiff LDI Investor Group ("LDI Group") and Plaintiff Arthur Gary LaFrano ("LaFrano") have opposed each other's motions for appointment as lead plaintiff and for plaintiff's counsel.[1]  (*See*

---

[1] After LaFrano and LDI filed their Motions, Plaintiff Radik Ismagilov, who had also moved for appointment as lead plaintiff filed a Notice of Non-Opposition stating that "Ismagilov does not oppose the lead plaintiff motions of movants with larger financial interests," but specifying that "if the Court determines that the lead plaintiff movants with financial interests larger than that of Mr. Ismagilov are incapable or inadequate to represent the class in this litigation, Mr. Ismagilov remains willing and able to serve as lead plaintiff or as a class

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                     Date: May 02, 2022

Title:  Eljon Lako v. Loandepot, Inc. et al

LaFrano Opp., Doc. 56; LDI Opp., Doc. 57.)  Each replied.  (LaFrano Reply, Doc. 58; LDI Reply, Doc. 59.)  Additionally, LaFrano has separately moved for leave to file a sur-reply.  (*See* Sur-Reply Mot., Doc. 61; Sur-Reply, Doc. 62-1.)  LDI Group opposed.  (Sur-Reply Opp., Doc. 64.)

   Having reviewed the filings and having heard oral argument, the Court GRANTS all motions to the extent they request consolidation, GRANTS LaFrano's Motion for appointment as lead plaintiff, DENIES the LDI Group's Motion for appointment as lead plaintiff, and GRANTS LaFrano's Motion for Leave to File a Sur-Reply and deems the Sur-Reply at Doc. 62-1 filed.

## I.     BACKGROUND

   Two securities class actions have been brought against Defendants Loandepot, Inc., Anthony Hsieh, Patrick Flanagan, Nicole Carrillo, Andrew C. Dodson, John C. Dorman, Brian P. Golson, and Dawn Lepore.[2]  The Lako Action was filed on September 3, 2021, and the Doban Action was filed on September 14, 2021.  Plaintiffs in both actions allege that they and other shareholders suffered losses as a result of purchasing Defendant Loandepot, Inc. ("Loandepot") stocks at prices alleged to be artificially inflated by Loandepot's false or misleading statements.  (Lako Action Compl., Doc. 1, ¶¶ 1-2; Doban Action Compl., Doc. 1, ¶¶ 1-2.)[3]  The Lako Action specifies that its Class Period is February 16, 2021 to the date of the filing of the Complaint, September 3, 2021.

---

representative."  (Ismagilov Non-Opp., Doc. 55.)  Because the Court determines LaFrano meets the criteria to serve as lead plaintiff, it DENIES Ismagilov's motion for appointment, to the extent it has not been effectively withdrawn.

   [2] The Lako action additionally names as Defendants: Goldman Sachs and Co. LLC, Bofa Securities, Inc., Credit Suisse Securities USA LLC, Morgan Stanley and Co. LLC, Barclays Capital Inc., Citigroup Global Market Inc., Jefferies LLC, UBS Securities LLC, William Blair and Company, L.L.C., JMP Securities LLC, Piper Sandler and Co., Raymond James and Associate, Inc., Nomura Securities International, Inc., Amerivet Securities, Inc., and Does 1-100.

   [3] With the exception of the Doban Complaint, unless otherwise stated, all other citations to documents shall refer to documents filed on the Lako Action docket.

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                      Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

(Lako Compl. ¶ 77.)  Although the Doban Action does not specify a class period, it states that it is "on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired loanDepot common stock in the IPO or purchased loanDepot common stock thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO and were damaged thereby." (Doban Compl. ¶ 53.)  Both Actions assert claims for violations of Sections 11 and 15 of the Securities Act.  (*See* Lako Action Compl. ¶¶ 83-96; Doban Compl. ¶¶ 60-73.)

On September 7, 2021, notice of the filing of the Lako Action was published on GlobeNewswire.  (*See* Ex. A to Bottini Decl., Doc. 37-3.)  The notice set forth the details and pendency of the action and putative class members' right to seek appointment as lead plaintiff within 60 days.  (*Id.*)

## II.    LEGAL STANDARDS

### A.    Consolidation

Under Rule 42(a), the Court may consolidate actions if they involve a "common question of law or fact."  Fed. R. Civ. P. 42(a).  "Class action shareholder suits in particular are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned." *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *1 (S.D. Cal. Aug. 8, 2011) (quotation marks omitted).

### B.    Private Securities Litigation Reform Act

The Private Securities Litigation Reform Act ("PSLRA") governs the Court's appointment of lead plaintiff.  Under the PSLRA, the plaintiff in the initial action must cause a notice to be published in a widely circulated national, business-oriented publication no later than 20 days after the filing of the complaint.  15 U.S.C. § 78u-4(a)(3)(A)(i).  The notice must inform members of the purported class of (1) the details

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                   Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

and pendency of the action; and (2) their right to seek appointment as lead plaintiff within 60 days after the date on which notice is published.  *Id.*  Not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.  *Id.*

Within 90 days after the publication of the notice, a court shall consider any motion made by a class member to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(B)(i). Additionally, a court is required to appoint a lead plaintiff in a timely manner after the decision to consolidate has been made.  *Id.* § 78u-4(a)(3)(B)(ii).  A court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members."  *Id.* § 78u-4(a)(3)(B)(i).

The PSLRA provides a presumption that the most adequate plaintiff is the one who has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.* § 78u-4(a)(3)(B)(iii)(I).  "In other words," the first step of the most adequate plaintiff analysis requires the district court to "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  Second, the court must "focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id.* (quoting Fed. R. Civ. P. 23(a)) (emphasis in original).

Once a court has identified the presumptive lead plaintiff, at step three, other candidates have the opportunity to rebut the presumption.  *Id.*  The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                           Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

### III.   DISCUSSION

#### A.   Consolidation

Each Motion requests that the Court consolidate the Lako and Doban Actions and this point is uncontested.  (*See* LDI Mot. at 1; Ismagilov Mot. at 1; LaFrano Mot. at 1.) The Court GRANTS the Motions to Consolidate.  Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).  "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Ct.*, 877 F.2d 777 (9th Cir. 1989).  These actions present virtually the same factual and legal issues, and the Court concludes that consolidation is appropriate.

#### B.   Notice Requirements of PSLRA

As discussed above, the Lako Action was filed September 3, 2021, and notice was published in BusinessWire on September 7, 2021.  That notice sets forth the details and pendency of the action and putative class members' right to seek appointment as lead plaintiff within 60 days.  Accordingly, the notice satisfies the PSLRA requirements.

#### C.   Appointment of Lead Plaintiff

Under the PSLRA, district courts are to appoint as lead plaintiff the one "most capable of adequately representing the interests of class members." *In re Cavanaugh*, 306 F.3d at 729 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  "The 'most capable' plaintiff— and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                    Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

### 1.      Financial Interest

"[T]he presumptive lead plaintiff" is "the one who has the largest financial interest in the relief sought by the class" and otherwise satisfies the requirements of Rule 23.  *Id.* at 730.  "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which has the most to gain from the lawsuit[,]" and it "must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of typicality and adequacy."  *Id.* (quotations omitted).  "If the plaintiff with the largest financial stake . . . satisfies these requirements, he becomes the presumptively most adequate plaintiff."  *Id.*  If he does not, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23."  *Id.*

Thus, the first matter for the Court to decide is which potential lead plaintiff has the largest financial interest in the relief sought by the class.  "The PSLRA does not specify how to assess which movant has the 'largest financial interest in the relief sought by the class,' and the Ninth Circuit has left it to the district courts to 'select accounting methods that are both rational and consistently applied' in making this determination."  *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (quoting *In re Cavanaugh*, 306 F.3d at 730 n.4).  "District courts 'have typically considered the Olsten-Lax factors to determine who has the largest financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'"  *Id.* (quoting *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007)); *see also McGee v. Am. Oriental Bioengineering, Inc.*, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012).  Of the four factors, "courts consider the fourth factor, the approximate losses suffered, as most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                              Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

determinative in identifying the plaintiff with the largest financial loss."  *Knox*, 136 F. Supp. 3d at 1163 (quoting *Richardson*, 2007 WL 1129344 at *4).

In support of his Motion, LaFrano alleges that pursuant to or traceable to Loandepot's initial public offering (IPO), he: (1) purchased 35,000 Loandepot securities; (2) expended $590,525 on his purchases of those securities; (3) retained 35,000 of those securities; and (4) as a result of Loandepot's disclosures, he suffered a loss of $208,850 in connection with his purchase of those securities.  (LaFrano Mem. at 9; Ex. A to Pafiti Decl., Doc. 44-1.)  LaFrano has calculated his loss based on the method provided for by Section 11's measure of damages: he alleges that his losses are the difference between the amount he paid for the security (not exceeding the price at which the security was offered to the public) and the value of those shares at the time the suit was brought.  *See* 15 U.S.C. § 77k(e).

In support of its Motion, LDI Group alleges that "members of the LDI Investor Group have collectively purchased 180,038 shares of loanDepot stock pursuant or traceable to the Offering Documents and has suffered losses of approximately $643,021.70, as a result of Defendants' misconduct."  (LDI Mem. at 6; Ex. C to Bottini Decl., Doc. 37-5.)  LDI Group does not specifically lay out the methodology it used to calculate these losses; however, it appears to calculate its losses based on the difference between how much each member spent on Loandepot shares (no matter when they were purchased, and even though some of the shares were purchased above the price at which the security was offered to the public) and either the price the members sold those shares at, or alternatively, the value of the shares held on September 3, 2021, the date the Lako Action was filed.  (*See generally* Ex. C to Bottini Decl.)

The Court adopts LaFrano's loss calculation methodology.  His accounting method is "both rational and consistently applied" across each of his purchases.  *In re Cavanaugh*, 306 F.3d at 730 n.4).  By contrast, the LDI Group has not provided the Court with sufficient information to determine whether its methodology is rational and consistently applied across its own data.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                   Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

Using LaFrano's methodology, however, the LDI Group still has a greater financial interest in the outcome than LaFrano.  Even setting aside LDI's argument that LaFrano's losses should be reduced based on the timing of some of his purchases[4], and even accepting LaFrano's own calculation of the LDI Group's losses, LaFrano has suffered only a loss of $208,850, whereas LDI has suffered losses totaling $298,445.[5] (LaFrano Opp. at 2.)  Moreover, another Olsten-Lax factor—the number of shares purchased—also supports that LDI Group has the greatest financial interest: LDI Group members purchased 180,038 shares, whereas LaFrano purchased only 35,000 shares. (LDI Opp. at 2 (citing Doc. 37-5 at 2 and Doc. 44-1 at 2).)  Thus, the Court holds that LDI Group has the greatest financial interest.[6]

The Court also finds that issues with LDI Group's composition are best addressed in step two of the Court's analysis—whether the movant with the greatest financial interest satisfies Rule 23's requirements.  The Ninth Circuit has noted that "[m]any district courts have considered the lack of a pre-litigation relationship as part of their adequacy analysis at step two . . . . along with other factors such as the size of the group, how the members found their counsel, and the prosecution procedures set out in their filings." *In re Mersho*, 6 F.4th 891, 901 (9th Cir. 2021).  Accordingly, the Court will scrutinize the appointment of a group as lead plaintiff at step two, but will permit the members of the LDI Group to aggregate their losses at step one.  *See Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020) ("[C]laims aggregation is more

[4] The LDI Group argues that LaFrano's losses are overstated because LaFrano purchased 5,000 shares of stock five days before the IPO and issuance of the Prospectus.  (LDI Opp. at 3.) LDI Group claims that, as a result, $69,950 must be deducted from LaFrano's claimed losses of $208,850, reducing them to $138,900.  (*Id.* at 3.)

[5] LDI disputes this total and argues that it should be $303,958.63 under LaFrano's methodology.  (*See* LDI Reply at 5 n.3.)

[6] The Court notes, however, that LaFrano still appears to have suffered the greatest loss of any individual movant.  The members of the LDI Group have incurred losses as follows: Scott Coloney incurred a loss of $139,351.96; Benjamin Lim, $29,110.35; Diane Nguyen, $135,496.32; and Chris Ruhland, $0.  (Ex. A to Chang Decl., Doc. 59-2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                     Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

the rule than the exception under the PSLRA." (citing *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018))).

### 2.      Typicality and Adequacy Under Rule 23

LDI Group must also satisfy the requirements of Rule 23—in particular, those of "typicality" and "adequacy." *Cavanaugh*, 306 F.3d at 730.  Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality inquiry is intended to determine whether the lead plaintiff has incentives that are aligned with the rest of the class members." *Ferreira*, 2020 WL 3246328, at *8.  Rule 23 also "requires that the representative class will fairly and adequately protect the interests of the class." *Id.* "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  In making its Rule 23 determination, however, the Court "must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of [these] claims." *Cavanaugh*, 306 F.3d at 730.

Here the Court has serious concerns about the typicality of the LDI Group's members and its ability to protect the interests of absent class members fairly and adequately.  Critically, the LDI Group failed to select and apply a rational and consistently applied methodology for calculating its losses.  This is a key inquiry in determining the most adequate plaintiff, and the failure to select an appropriate methodology indicates either (1) that LDI Group and its counsel lack the knowledge and expertise to litigate a major securities class action, or alternatively, (2) that LDI Group and its counsel were attempting to inflate LDI's losses to secure the position as lead plaintiff.  Neither reflects well on LDI's adequacy to litigate this action.  Additionally, LDI Group's decision, first articulated in its Reply brief, to rely upon a novel and controversial measure of relief—Section 16 of the 1933 Act—as a separate form of relief

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                     Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

providing the group with the greatest financial interest also calls LDI Group's adequacy into question.  Section 16 of the 1993 Act provides for all remedies that may exist at law and in equity; thus, the inclusion of Section 16 damages in the greatest financial interest calculation is at odds with *Cavanaugh*'s directive that district courts are to "select accounting methods that are both rational and consistently applied."  *Cavanaugh*, 306 F.3d at 730 n.4.  Indeed, the greatest financial interest calculation is intended to be a straightforward means of comparison, but LDI's approach would greatly complicate the determination.  Thus, LDI Group's approach to its calculation of its financial interest undermines its assertion that it would be an adequate representative within the meaning of Rule 23.

Second, the Court is concerned that LDI member Chris Ruhland is not typical of the class.  Although LDI contends that its "claims are typical of the claims of other members of the putative class because, like all other class members, the group purchased loanDepot shares at prices artificially inflated by Defendants' materially false and misleading statements or omissions, and suffered damages as a consequence," (LDI Mem. at 7), pursuant to Section 11's statutory damages methodology, Ruhland incurred $0 in damages.  This suggests that Ruhland is not typical of the class, even as LDI Group has defined the class claims; moreover, because he incurred no damages, Ruhland could be subjected to unique standing defenses.  A plaintiff  "subject to unique defenses," may be rendered "incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Third, the Court is likewise concerned that LDI Group member Scott Coloney is not typical of the class.  Coloney's records indicate that he acted as a day trader by executing four or more day trades within five business days using the same account.  (*See* Ex. C to Bottini Decl., Doc. 37-5, at ECF 3-6; *see also* FINRA Rule 4210(f)(8)(B)(ii) (defining day trader as a customer who executes four or more day trades within five business days)).  Day traders may be subject to unique defenses because, while the "class's damages stem from reliance upon the company's [offering statements]," a day trader's damages may be attributed to "daily market volatility."  *Eichenholtz v. Verifone*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                      Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

*Holdings, Inc.*, 2008 WL 3925289, at \*11 (N.D. Cal. Aug. 22, 2008).  At minimum, Coloney's trading data is sufficient "to raise serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions made by" Loandepot.  *Applestein v. Medivation, Inc.*, 2010 U.S. Dist. LEXIS 98255, at \*10 (N.D. Cal. Sept. 20, 2010).  Specifically, Section 11(e) provides a negative causation affirmative defense to claims that a Registration Statement was materially misleading if a defendant can show that a plaintiff's losses were not attributable to the alleged misrepresentation or omission.  *See* 15 U.S.C. § 77k(e); *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421-22 (9th Cir. 1994) (recognizing loss causation defense).  And although many courts have held that "a plaintiff's status as a purported 'day trader' is not enough in and of itself to rebut the presumption of adequacy," *Schueneman*, 2011 WL3475380 at \*7, Coloney's status as a day trader combined with Ruhland's lack of statutory damages does not weigh in favor of concluding that LDI Group's members are typical of the class.

Fourth, LDI Group provided sparse information regarding the individual members of the group, recited only boilerplate assurances that its members would work together to oversee the litigation, and did not provide any information regarding whether the members had a pre-litigation relationship.[7]  (*See* Joint Decls. Docs. 37-6, 59-4.)  At oral argument, counsel for LDI insisted that this Court previously held that the provision of a joint declaration by a group plaintiff is sufficient to demonstrate adequacy, citing this Court's decision in *McCracken v. Edwards Lifesciences Corp.*, 2014 WL 12694135 (C.D. Cal. Jan. 8, 2014).  But *McCracken* makes clear that the Court was not satisfied merely with the provision of a joint declaration by the group plaintiff in that action; instead, the Court's decision relied on the strength and substance of the declarations submitted in that case.  *McCracken*, 2014 WL 12694135, at \*4.  The Court looked to the fact each member was a sophisticated retirement fund with hundreds of millions in assets under

---

[7] At oral argument, LDI Group's counsel confirmed that the members had no prelitigation relationship.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                  Date: May 02, 2022

Title:  Eljon Lako v. Loandepot, Inc. et al

_____

management, certain members of the group had prior experience serving as lead plaintiff in securities class actions, and the investor group's joint declaration described in detail the group's procedures for overseeing the litigation, including: regular joint conference calls with counsel, short-notice phone and email communication, and the designation of representatives to attend proceedings, depositions, settlement mediations, and hearings. *Id.* In short, it was the information in the declarations, not the fact of a declaration alone, that allowed the Court to determine that the group would adequately represent the class. *See id.*

By contrast here, the LDI Group has provided the Court with almost no information about its individual members; only Scott Coloney is identified as "a real estate professional and an experienced investor." (*See* Joint Decl. Doc. 37-6, ¶ 9.) The LDI Group says, without much detail, that it has "established protocols to communicate with counsel by email and telephone," but does not state what those protocols are, and flags that the group "will make decisions by majority vote"—a curious choice for an even-numbered group. (*Id.*) The Joint Declarations say little more; thus, nothing about the substance of these declarations permits this Court to conclude that LDI Group as a whole, or its individual members, will adequately represent the class, particularly given the "unique concerns" posed by the appointment of a group lead plaintiff. *McCracken*, 2014 WL 12694135, at *3. In essence, while the LDI Group seeks the advantage of aggregating its group members' individual losses, it has failed to take on the corresponding burden to demonstrate that each individual member, and the group collectively, satisfies Rule 23's adequacy and typicality requirements.

The Court has "latitude as to what information it will consider in determining typicality and adequacy." *Cavanaugh*, 306 F.3d at 732. And particularly in light of the fact no member of the LDI Group suffered a greater financial loss than the next individual plaintiff in line, appointing a group lead plaintiff based on the group's aggregated financial interest without closely scrutinizing whether that group had made the required prima facie showing under Rule 23 would be contrary to the Court's obligations. Here, the Court finds that LDI Group's selection of an inappropriate

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                          Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

methodology for loss calculation, selection of a member who has suffered no Section 11 damages, selection of a member who potentially faces unique defenses as a day trader, and failure to provide any meaningful information about the group members all cast doubt on LDI Group's ability to fairly and adequately protect the interests of the class and vigorously prosecute the action.  In conclusion, the Court rules that LDI Group has failed to make a prima facie showing that it satisfies Rule 23's requirements for all these reasons combined.

Because LDI Group has failed to satisfy Rule 23's requirements, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.* at 729.  LaFrano is the is the plaintiff with the next-largest financial stake.

The Court finds that LaFrano has made a prima facie showing that he satisfies Rule 23's requirements.  Because LaFrano is an individual seeking appointment as lead plaintiff, the Court's analysis as to adequacy and typicality is simpler; none of the unique concerns posed by group lead plaintiffs are at issue.  LaFrano purchased a significant amount of Loandepot common stock pursuant to or traceable to the IPO and alleges that he incurred substantial financial losses as a result of the false or misleading statements alleged in the Lako and Doban Actions.  (LaFrano Mem. at 10.)  "In a securities fraud class action, this is sufficient." *See McCracken*, 2014 WL 12694135, at *3 (citing *Ferrari v. Gisch*, 225 F.R.D. 599, 606-07 (C.D. Cal. 2004).  LaFrano's claims are based on the same legal theory and arise from the same events and course of conduct as the proposed class's claims, and the Court therefore concludes that LaFrano satisfies Rule 23(a)(3)'s typicality requirement.

"[R]epresentation is 'adequate' when the representative's interests are not antagonistic to the interests of absent class members, it is unlikely that the action is collusive, and counsel for the class is qualified and competent." *Id.* (quoting *Ferrari*, 225 F.R.D. at 607).  There is no antagonism between LaFrano's interests and those of the class, and his losses demonstrate that he has a sufficient interest in the outcome of the litigation.  There is also no indication that LaFrano would be subject to any unique

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                  Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

defenses.  Moreover, based on the information provided in LaFrano's declaration, the
Court is satisfied he will be able to competently represent the class.  (*See* LaFrano Decl.,
Doc. 44-4.)  LaFrano is a retired HVAC specialist who resides in New Jersey, and he has
been investing in the securities markets for approximately twelve years.  (*Id.* ¶ 2.)  His
declaration also demonstrates that he understands the responsibilities of serving as lead
plaintiff and he is willing to undertake them to achieve the best result possible for the
class.  (*Id.* ¶¶ 3-11.)

Thus, the Court concludes that LaFrano is the presumptive lead plaintiff because
he is the movant with the greatest financial interest in the outcome of the litigation who
has made a prima facie showing that he satisfies Rule 23's requirements.

### 3.    LDI Group's Challenge to LaFrano's Typicality and Adequacy

LaFrano's Motion is opposed only by the LDI Group; as the Court has already
determined the LDI Group failed to satisfy Rule 23's requirements, the Court need not
repeat its previous analysis.  Even considering its challenge at step three, however, LDI
Group has failed to rebut the presumption that LaFrano is the most adequate plaintiff.

LDI contends only that LaFrano "may be subject to unique defenses in light of his
pre-IPO purchases," because "[t]he fact [he] was able to purchase LDI stock before it
became available to the open market indicates that he had access to LDI insiders[,]" and
"[s]uch access raises concerns regarding his knowledge of LDI's financial conditions and
potential causation issues relating to damages."  (LDI Opp. at 4.)  LaFrano responds to
this argument, in Reply, stating that "loanDepot's securities became open to the market
on February 11, 2021," and that "7.8965 million shares of loanDepot securities were
traded on that day."  (LaFrano Reply at 8.)  Therefore, LaFrano contends that any
accusation that he had access to knowledge of FDI's financial conditions is baseless.
(*Id.*)

"For the presumption [of lead plaintiff] to have meaning at step three, competing
movants must point to *evidence* of inadequacy," and they "must convince the district
court that the presumptive lead plaintiff would not be adequate, not merely that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                                    Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

district court was wrong in determining that the prima facie elements of adequacy were met." *In re Mersho*, 6 F.4th at 901 (emphasis added).  On this basis, the Ninth Circuit found clear error where a district court determined a competing movant rebutted the presumption by providing mere speculation about its own misgivings.  *See id.*  LDI Group has not provided any evidence to establish that LaFrano had access to insiders or knowledge about LDI's financial conditions; therefore, the Court cannot conclude that the presumption has been rebutted, nor could it possibly "articulate how the evidence" LDI has provided "proves inadequacy," as required by step three.  *Id.* at 902.

In conclusion, the Court GRANTS LaFrano's Motion for appointment as lead plaintiff and DENIES LDI's Motion.

### D.      Appointment of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  "A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class."  *Osher*, 2001 WL 861694, at *4.  Here, LaFrano has selected Pomerantz as lead counsel for the class.  (LaFrano Mem. at 12.)  Pomerantz is highly experienced in securities litigation and class action litigation, and Pomerantz's appointment poses no threat to the interests of the class.  Accordingly, the Court GRANTS LaFrano's Motion to Approve Pomerantz as lead counsel for the for the class.

## IV.      <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS the Motions to Consolidate and GRANTS LaFrano's Motions for Appointment of Lead Plaintiff and Counsel and DENIES LDI Group's and Ismagilov's Motions for Appointment of Plead Plaintiff and Counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01449-JLS-JDE                              Date: May 02, 2022
Title:  Eljon Lako v. Loandepot, Inc. et al

Initials of Deputy Clerk: droj