POMERANTZ LLP
Jennifer Pafiti (SBN 282890)
jpafiti@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190

*Counsel for Lead Plaintiff Arthur Gary LaFrano,*
*Additional Plaintiff Adam Doban, and*
*Lead Counsel for the Class*

[additional counsel on signature page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR GARY LAFRANO and ADAM DOBAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>LOANDEPOT, INC.; ANTHONY HSIEH; PATRICK FLANAGAN; NICOLE CARRILLO; ANDREW C. DODSON; JOHN C. DORMAN; BRIAN P. GOLSON; DAWN LEPORE; GOLDMAN SACHS & CO. LLC; BOFA SECURITIES, INC.; CREDIT SUISSE SECURITIES (USA) LLC; MORGAN STANLEY & CO. LLC; BARCLAYS CAPITAL INC.; CITIGROUP GLOBAL MARKETS INC.; JEFFERIES LLC; UBS SECURITIES LLC; WILLIAM BLAIR & COMPANY, L.L.C.; JMP SECURITIES LLC; PIPER SANDLER & CO.; RAYMOND JAMES & ASSOCIATES, INC.; NOMURA SECURITIES INTERNATIONAL, INC.; and AMERIVET SECURITIES, INC.,<br><br>Defendants. | Case No. 8:21-cv-01449-JLS-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>CLASS ACTION<br><br>Date:     April 19, 2024<br>Time:    10:30 a.m.<br>Courtroom:  8A<br>Judge:   Josephine L. Staton |

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...................................................1

II.  BACKGROUND ......................................................................2

   A.   Plaintiffs' Allegations ..............................................2

   B.   Procedural History ..................................................3

III. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED...3

   A.   The Settlement Class Satisfies All Requirements of Rule 23(a). ...........................................................5

   B.   The Settlement Class Satisfies All Rule 23(b)(3) Requirements. ..................................................6

IV.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL. ....7

   A.   The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement .......8

      1.   The Strength of Lead Plaintiffs' Case and Risk of Continued Litigation ...............................................9

      2.   The Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial .................11

      3.   The Additional Risks of Continued Litigation ...................12

   B.   The Settlement Amount Supports Final Approval. ..............13

   C.   The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval. .....................................14

   D.   The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel. ..................................................16

   E. The Favorable Reaction of the Settlement Class Supports Approval. ..................................................17

F. The Settlement Meets the Remaining Rule 23(e)(2) Factors. .... 18

    1.    The Proposed Method for Distributing Relief Is Effective. 18

    2.    The Proposed Award of Attorneys' Fees is Appropriate. ... 18

    3.    The Parties Have No Other Agreements Besides
       Opt-Outs .................................................................................. 19

    4.    There Is No Preferential Treatment; the Proposed Plan
       of Allocation Treats Class Members Equitably .................. 20

G.    The Court Should Approve the Plan of Allocation. ........... 20

V.  NOTICE TO THE SETTLMENT CLASS SATISFIED
    DUE PROCESS. ........................................................................ 21

VI. CONCLUSION ............................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & J Deutscher Family Fund v Bullard*,
   CV 85-1850-PAR, 1986 WL 14903 (C.D. Cal. Sept. 22, 1986) ............................6

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................5, 6

*Baker v. SeaWorld Ent., Inc.*,
   No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19,
   2020) ...................................................................................................................22

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................11

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................................6

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..............................................................................17

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) ..............................................................................................6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................17

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ....................................................10

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................................13, 19

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................8

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ....................... 13

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................... 10

*In re Cendant Corp. Litig*,
   264 F.3d 201 (3d Cir. 2001) .............................................................................. 10

*In re China Med. Corp. Sec. Litig.*,
   No. 8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7,
   2014) ................................................................................................................... 16

*In re Cooper Cos. Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ......................................................................... 6

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ................... 20

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................. 20

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005).......... 8, 12, 16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................................... 7, 14

*In re NeoPharm, Inc. Sec. Litig.*,
   705 F. Supp. 2d 946 (N.D. Ill. 2010) ................................................................. 12

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)......................................................... 11, 20

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ............................................................................. 12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................... 16

*In re Portal Software, Inc. Sec. Litig.*,
   No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ................... 15

iv

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ..................22

*In re Puda Coal Sec. Inc., Litig.*,
   30 F. Supp. 3d 230 (S.D.N.Y. 2014) .......................................................................12

*In re Silver Wheaton Corp. Sec. Litig.*,
   No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11,
   2017) ....................................................................................................................4, 5

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ...............................................................................8

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ....................................................................................7

*In re Vivendi Universal, S.A., Sec. Litig.*,
   2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) .................................................................9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.
   Litig.*,
   No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25,
   2016) .................................................................................................................14, 15

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................................20

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................9

*Kamakana v. City & Cty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ..................................................................................19

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009) ...................................................................9

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ......................................................................................7

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ......................................................................8

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 2:10-CV-00302 MRP, 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013)..............17

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
    No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27,
    2010) ............................................................................................................4, 5, 6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,4399
    221 F.R.D. 523 (C.D. Cal. 2004)............................................................13, 16, 17

*Nguyen v. Radient Pharm. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012)...........................................................................5

*Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................................8, 14

*Riker v. Gibbons*,
    No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .........15, 20

*Robbins v. Koger Properties, Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...........................................................................13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...............................................................................21

*Salazar v. Midwest Servicing Grp., Inc.*,
    No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4,
    2018) ......................................................................................................................8

*Satchell v. Fed. Express Corp.*,
    No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................16

*Tom v. Com Dev USA, LLC*,
    No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4,
    2017) ......................................................................................................................7

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...............................................................................7, 8

*Vaccaro v. New Source Energy Partners L.P.*,
    15CV8954-KMW, 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)........................15

**Statutes**

15 U.S.C. § 78u-4 ............................................................................13, 18, 21

Private Securities Litigation Reform Act of 1995 ........................................22

**Rules**

Fed. R. Civ. P. 23 ...............................................................................*passim*

MP&A IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT; CASE NO. 8:21-CV-01449-JLS-JDE

Lead Plaintiff Arthur Gary LaFrano ("LaFrano" or "Lead Plaintiff") and Additional Plaintiff Adam Doban ("Additional Plaintiff," and together with Lead Plaintiff, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum in support of their Motion for Final Approval of Class Action Settlement.[1]

## I.    PRELIMINARY STATEMENT

The Parties reached a settlement of this securities class action for a cash payment of $3,500,000 ("Settlement").  The Settlement, reached only after arm's-length negotiations and based upon the recommendation of a well-regarded mediator, is a fair, reasonable, and adequate result, recovering approximately 11% of the total maximum damages of $32 million under Plaintiffs' best-case scenario, despite significant risk.  Plaintiffs now seek final approval of the Settlement.  If approved, the Settlement will completely resolve the Action, settling all claims of Settlement Class Members who have not submitted valid requests for exclusion.  The Settlement provides a substantial recovery to the Settlement Class despite several obstacles that Plaintiffs faced, including the amount of potentially recoverable damages, Defendants' potential defenses, Defendants' ability to pay a larger amount, and the risks of prosecuting this litigation through trial and appeals.

The terms of the Settlement are set forth in the Stipulation.  In the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated January 5, 2024

---

[1] All capitalized terms not otherwise defined shall have the same meanings ascribed to them in the Stipulation and Agreement of Stipulation ("Stipulation"), filed on July 26, 2023 (ECF No. 112).  Internal citations and quotations are omitted and emphasis is added unless otherwise noted.  Citations to "Park Decl." are to the Declaration of Jonathan D. Park, filed herewith.  Citations to "Murasso Decl." are to the Declaration of Elise Murasso, filed herewith.  Citations to "Fee Brief" are to the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs, filed herewith.

("Preliminary Approval Order") (ECF No. 128), the Court preliminarily approved the Settlement, preliminarily certified the Settlement Class for settlement purposes, and directed that notice be disseminated to potential members of the Settlement Class.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Fed. R. Civ. P. 23(e). Plaintiffs believe their case is strong, but determined that executing the Settlement was in the best interests of the Settlement Class, especially given the risks inherent in this complex litigation. Plaintiffs faced other material obstacles to proving their claims, such as prevailing at class certification, summary judgment, and trial. Rather than engaging in expensive, protracted litigation with no assurance of success, Plaintiffs agreed to an early resolution of this action as the best outcome for the Settlement Class. Following contentious negotiations with Defendants, Plaintiffs obtained a settlement that is fair, reasonable, and adequate under the circumstances. The Settlement eliminates the risks of continued litigation and ensures a substantial cash recovery for the Settlement Class. Given the obstacles to recovery and the significant amount of time, expenses and risks that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation ("Plan") is fair, reasonable, and adequate. Here, Lead Counsel developed the proposed Plan in consultation with Plaintiffs' damages expert and the Claims Administrator. The proposed Plan comports with applicable legal principles and Plaintiffs' theory of damages, and in no way favors Plaintiffs over other members of the Settlement Class. The Court should approve the Plan.

## II.    BACKGROUND

### A.    Plaintiffs' Allegations

loanDepot is a mortgage lender, extending mortgage loans to borrowers and

selling most of those loans to investors via Fannie Mac, Freddie Mac, and other government-sponsored entities ("GSEs") and agencies. Plaintiffs allege that, as loanDepot approached its initial public offering ("IPO"), it systematically violated underwriting guidelines to close loans as fast as possible. Plaintiffs pointed to allegations made by loanDepot's former Chief Operating Officer that loanDepot retaliated against her for resisting these efforts. Plaintiffs further alleged that, after the Company discovered that it had mistakenly double-charged daily interest to refinance borrowers, it chose to refund only borrowers in states with more active attorneys general, and that the Company misled investors concerning its "gain on sale margins," which were declining at the time of the IPO.

Plaintiffs alleged that Defendants made numerous false and misleading statements and omissions of material facts in the IPO Registration Statement and during the Class Period about the Company's underwriting practices, compliance efforts, and gain on sale margins, and that when the market learned the truth, loanDepot's stock price declined, injuring investors.

### B.    Procedural History

This settlement was obtained after over one and one-half years of litigation and a failed in-person mediation.  ECF No. 110, at 3-5.

Plaintiffs' preliminary approval motion was opposed by one purported Settlement Class Member.  ECF No. 113. Plaintiffs filed a reply in support of preliminary approval that rebutted that opposition.  ECF No. 114.  On December 8, 2023, after further briefing (ECF Nos. 119 and 121), the Court heard oral argument on the preliminary approval motion.  The Court asked Plaintiffs to make specified amendments to the Notice Packet. ECF No. 126. Plaintiffs did so (ECF No. 127), and the Court entered the Preliminary Approval Order on January 5, 2024 (ECF No. 128).

### III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED.

The Court has preliminarily certified the Settlement Class for settlement

1  purposes.  ECF No. 128, ¶4.  The Court should finally certify the Settlement Class for
2  settlement purposes.

3      Certification of a settlement class is appropriate where the proposed class and
4  class representative meet the four requirements of Rule 23(a): numerosity,
5  commonality, typicality, and adequacy.  *See* Fed. R. Civ. P. 23(a).  Certifying a class
6  action for damages also requires a showing under Rule 23(b)(3) of predominance and
7  superiority.  Fed. R. Civ. P. 23(b)(3).

8      The Parties stipulated to the certification of the Settlement Class for settlement
9  purposes.  Stipulation, ¶2.  The Settlement Class comprises "all persons and entities
10 who purchased or otherwise acquired shares of loanDepot's Class A common stock
11 pursuant or traceable to the Company's registration statement issued in connection
12 with the Company's initial public offering completed on February 16, 2021 and all
13 persons or entities who purchased or acquired shares of loanDepot's Class A common
14 stock between March 16, 2021 and September 22, 2021, inclusive (the "Class Period"),
15 and were allegedly damaged thereby."  ECF No. 128, ¶4. Excluded from the
16 Settlement Class are: "(i) Individual Defendants; (ii) the immediate family members of
17 the Individual Defendants; (iii) the officers and directors of loanDepot during the
18 period beginning February 11, 2021 through the end of the Class Period and their
19 immediate family members; (iv) any firm, trust, corporation, or other entity in which
20 any Defendant has, or had during the period beginning February 11, 2021 through the
21 end of the Class Period, a majority ownership interest; and (v) the legal
22 representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded
23 person or entity under clauses (i)-(iv)."  *Id.*

24     Ninth Circuit courts routinely certify class actions alleging securities fraud.  *See,*
25 *e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL
26 2039171 (C.D. Cal. May 11, 2017); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No.
27 CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010).  Here, the
28

proposed Settlement Class meets the requirements of Rules 23(a) and 23(b)(3).  Thus, the Court should grant final certification of the Settlement Class.

### A.    The Settlement Class Satisfies All Requirements of Rule 23(a).

First, the Settlement Class is sufficiently numerous. In the Ninth Circuit, "classes of 40 or more are numerous enough." *Silver Wheaton*, 2017 WL 2039171, at *6.  In cases involving publicly-traded companies, like loanDepot, where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *see also Silver Wheaton*, 2017 WL 2039171, at *6.

Second, the conduct alleged in the Amended Complaint was common to the Settlement Class.  All Settlement Class Members acquired loanDepot Stock pursuant or traceable to the Registration Statement, or during the Settlement Class Period at prices artificially inflated by Defendants' alleged misrepresentations and were damaged. That is sufficient to show commonality. *Semtech*, 2010 WL 11507255, at *3.

Third, Plaintiffs' claims are typical of those of the Settlement Class.  Plaintiffs acquired loanDepot Stock pursuant or tradeable to the Registration Statement and during the Settlement Class Period, and suffered significant losses thereby. *See* ECF Nos. 73 (Appendices A and B).  No evidence exists indicating that Plaintiffs' claims are atypical of the Settlement Class or that any unique defenses apply to their claims. *See Semtech*, 2010 WL 11507255 at *4-5 (finding typicality was met despite certain unique factors).  Plaintiffs thus satisfy the typicality requirement.

Fourth, Plaintiffs are adequate representatives of the Settlement Class, and Lead Counsel are adequate counsel.  Plaintiffs have diligently monitored this Action and supervised Lead Counsel.  *See* Park Decl., ¶51.  No evidence exists of any conflicts of interest between Plaintiffs and the other Settlement Class Members.  *Silver Wheaton*,

2017 WL 2039171 at *7-8.  Lead Counsel are experienced in prosecuting securities fraud class actions and have skillfully litigated this Action.  *See* Park Decl., Ex. 1. Plaintiffs and Lead Counsel thus satisfy the adequacy requirement.

### B.    The Settlement Class Satisfies All Rule 23(b)(3) Requirements.

Class certification is warranted where common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997).  This standard is easily met here.  The central issues—whether the Registration Statement contained material misrepresentations and whether Defendants made misrepresentations of material facts with scienter, artificially inflating the price of securities—predominate over any individual issue. This supports a finding of predominance.  *Semtech*, 2010 WL 11507255, at *7; *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("[C]ommon questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").

A class action is the best method of resolving this Action.   To certify a settlement class, the Court is not required to analyze each superiority factor in great detail.  *Amchem*, 521 U.S. at 620.  A court need not consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Id.*  "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws."  *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975).  "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing."  *A & J Deutscher Family Fund v Bullard*, CV 85-1850-PAR, 1986 WL

14903 (C.D. Cal. Sept. 22, 1986) (citing *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)).

The Court should grant final certification because the Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL.

Rule 23 requires judicial approval of class action settlements. Fed. R. Civ. P. 23(e). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). In evaluating settlements, Ninth Circuit courts consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the

plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant[2]; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into a merits inquiry. *Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Here, the Rule 23(e) and Ninth Circuit factors weigh in favor of final approval.

### A. The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement.

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement.  *Torrisi*, 8 F.3d at 1375–76 ("the cost, complexity and time of fully litigating the case" supported approval).  A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018).  Courts favor settlement where the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301

---

[2] There was no government participant, so this factor is neutral. *Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

(S.D. Cal. 2017), *aff'd*, 881 F.3d 111 (9th Cir. 2018).  Securities actions are complex and their outcomes uncertain.  *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  Lead Counsel and Plaintiffs carefully evaluated the merits, risks and potential weaknesses of their claims before entering into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risk posed in continuing to litigate.  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class's ultimate recovery be less than the proposed settlement).

## 1.    The Strength of Plaintiffs' Case and Risk of Continued Litigation

Securities class actions face myriad procedural hurdles.  The inherent risks are apparent from the Court's motion to dismiss order.  There, the Court rejected claims related to one of the three categories of statements that Plaintiffs alleged were false, and found insufficient scienter allegations for loanDepot's CFO.  ECF No. 82; *see In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved.").

Moreover, while Plaintiffs survived the pleading stage, there is no guarantee the evidence would ultimately support their claims.  The only certainty is that continued litigation would have been costly, risky, and drawn out.  This is because "securities class actions are inherently complex" (*La. Mun. Police Emps. Ret. Sys. v. Sealed Air*

*Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009)), and are frequently lengthy to litigate, in part because they often involve significant post-trial motions and appeals. *See, e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had not received recovery).

In order to prevail at summary judgment motion and trial, Plaintiffs would have to prove, *inter alia*, that the statements and omissions were false and misleading, that (with respect to the 10b-5 claims) the Exchange Act Defendants knew or were reckless in not knowing their statements and omissions were false and misleading. Plaintiffs would also have to rebut Defendants' negative causation defense to the claims under the Securities Act of 1933 and, with respect to the 10b-5 claims, prove that Defendants' misstatements were corrected and caused recoverable damages. Plaintiffs anticipate Defendants would present strong arguments challenging Plaintiffs' proof on all elements in their expected motion(s) for summary judgment and/or at trial. For example, Defendants argued in their motion to dismiss, and would undoubtedly argue at summary judgment or trial, that Plaintiffs failed to establish scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016).

Further, even if Plaintiffs proved liability, Defendants would assert that Plaintiffs could not establish loss causation and damages. The Parties held extremely disparate views on loss causation and damages, with Defendants arguing in their motion to dismiss that Plaintiffs did not adequately plead loss causation. *See* ECF No. 76-1 at 18-20; ECF No. 80 at 14-15. For instance, Defendants contended that, rather than the disclosures correcting alleged misstatements, "the 'far more plausible reason' for" the drop in loanDepot's stock price in March and May 2021 was "disappointing financial results." ECF No. 76-1 at 19 (quoting *Metzler Inv. GMBH v. Corinthian*

*Colls., Inc.*, 540 F.3d 1049, 1065 (9th Cir. 2008)). In addition, Defendants argued that the increase in loanDepot's stock price from September 21 to September 22, 2021, refuted any inference of loss causation. ECF No. 76-1 at 19-20. If the Court accepted Defendants' position on loss causation, in whole or in part, it could decrease or even eliminate damages. *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Finally, even if Plaintiffs prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal.  The appeals process would likely span years including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari to the Supreme Court, or both.  During this time on potential appeals, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.  Continued litigation would also risk depleting resources available for recovery.

## 2.    The Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial

While Plaintiffs are confident that the proposed class meets the requirements for certification, *see* Sec. III, *supra*, the class had not yet been certified when the Settlement was reached, and there is a risk the Court could disagree.  Even if the Court were to certify the class, there is always a risk that the class could later be decertified. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the

class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement.

### 3.      The Additional Risks of Continued Litigation

There is no question that further litigation would be risky, complex, and expensive. First, Plaintiffs would need to engage in formal fact discovery, requiring review of thousands of documents and taking numerous depositions. Park Decl., ¶30. The Parties would engage in expert discovery regarding loss causation and damages. Defendants would likely present expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of those stock drops concerned unrelated issues. *Id.* ¶29. Expert discovery and trial preparation would prove expensive and complex. *See Heritage Bond*, 2005 WL 1594403, at *6.

Even if Plaintiffs prevailed on class certification, Plaintiffs might lose on summary judgment. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter). Plaintiffs might have an expert excluded, damaging their case. *See, e.g.*, *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might reduce damages significantly. *See Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict* (reporting that plaintiffs won only 5% of the damages they requested).[3]  Plaintiffs

---

[3] ISS (Feb. 15, 2019), https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/.

might still lose even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). Even if Plaintiffs survive summary judgment and motions to exclude their experts, win at trial, secure a verdict for their damages, and then defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice).

Accordingly, the likely duration and expense of further litigation also support a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### B. The Settlement Amount Supports Final Approval.

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). Here, the $3.5 million Settlement constitutes a meaningful percentage of the maximum possible recovery and is eminently reasonable when accounting for the uncertainty, risks, and costs associated with any attempt to obtain a greater amount.

Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their claims, if the Court and jury accepted Plaintiffs' damages theory, and the jury verdict survived the inevitable appeals, the total maximum aggregate damages would be approximately $32 million. Thus, the Settlement Amount represents approximately 11% of the total maximum damages potentially available in this Action. This is a highly favorable result, particularly in light of the considerable litigation risks. This

13

recovery is well above the median recovery of 3.6% in securities class actions alleging Rule 10b-5 claims that settled in 2022, as well as the median recovery of 8.5% in securities class actions alleging 10b-5 claims with damages of a similar magnitude.[4] *See also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at \*8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages).  The recovery here compares favorably to recoveries in similar securities class action settlements.  And, of course, less than a complete victory on any of the assumptions would decrease recoverable damages or eliminate them altogether.

Given the risks of continued litigation, the percentage of recovery is fair, reasonable and adequate.  Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d  at 628 (N.D. Cal. 1982).

## C. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval.

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement.  *Mego*, 213 F.3d at 458.  Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *Id.* at 459.  Instead, "courts look for indications [that] the parties carefully investigated the claims before

---

[4] *See* ECF No. 111-3, Laarni T. Bulan, et al., Securities Class Action Settlements: 2022 Review and Analysis (Cornerstone Research) at 6; *Id.* (median recovery in cases alleging Rule 10b-5 claims with $25 million to $74 million in maximum estimated damages was approximately 8.5% of estimated damages in 2022, and 7.4% between 2013-2020); *Id.* at (median recovery for cases alleging only claims under Section 11 of the Securities Act was 4.7% in 2022).

reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

That formal discovery was in early stages does not weigh against approval. See, *e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."), *aff'd*, 895 F.3d 597 (9th Cir. 2018) & 741 F. App'x 367 (9th Cir. 2018). Lead Counsel extensively investigated the claims, including: (i) reviewing loanDepot's SEC filings, press releases, conference calls, and other public statements; (ii) reviewing public documents, reports, announcements, and news articles; (iii) reviewing the pleadings and filings in a lawsuit filed by loanDepot's former Chief Operating Officer; and (iv) retaining an investigator to independently interview former loanDepot employees. Lead Counsel also obtained and analyzed internal loanDepot documents.

Further, although Defendants had not formally produced discovery before the Parties reached a settlement-in-principle, the Parties exchanged detailed mediation briefs, participated in a mediation process, and Defendants produced internal documents in connection with the mediation. *Vaccaro v. New Source Energy Partners L.P.*, 15CV8954-KMW, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the [...] industry. The Court finds that Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Therefore, Plaintiffs and their counsel had a thorough understanding of the strengths and weaknesses of the Action.

**D.    The Proposed Settlement Resulted from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel.**

Courts presume that a proposed settlement is fair and reasonable when it results from arm's-length negotiations.  *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.").  Here, Plaintiffs reached the Settlement after arm's-length negotiations facilitated by a respected mediator, Jed D. Melnick of JAMS.  *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").  Mr. Melnick has considerable experience mediating complex, securities class actions.  Before the mediation, the Parties exchanged detailed mediation statements.  The mediation session ended without an agreement, and only weeks later reached an agreement in principle.  Mr. Melnick's participation in the Settlement underscores that it is the product of arm's-length negotiations.  *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (Mr. Melnick's mediation of settlement favored approval).

In addition to the non-collusive, vigorous settlement negotiations, counsel on both sides of this Action are experienced and knowledgeable when it comes to litigating complex, securities class actions.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Heritage Bond*, 2005 WL 1594403, at *9 (in a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation").  "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the

recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9; *DIRECTV*, 221 F.R.D. at 528.  *See* Park Decl., Ex. 1 (Pomerantz Firm Resume).

Lead Counsel's experience and reputation allowed it to leverage the credible threat of further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class.  Thus, Lead Counsel's experience supports approval.  Likewise, Defendants' counsel are preeminent firms with skilled securities practitioners, who vigorously represented their clients and were equally knowledgeable about the merits of the case.

Finally, Plaintiffs' support for the Settlement is further evidence that the Settlement is fair, reasonable and adequate.  Plaintiffs' support for a settlement should be accorded "special weight because [the plaintiffs] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).  The protracted arms' length negotiations and the support of both experienced counsel and Plaintiffs favors final approval.

### E.    The Favorable Reaction of the Settlement Class Supports Approval.

In total, 15,618 potential Settlement Class Members were mailed a Postcard Notice.  Murasso Decl., ¶12.  The deadline to file objections is March 29, 2024.  To date, no Settlement Class Members have formally objected to the Settlement.  *Id*. ¶24; Park Decl., ¶¶16, 46.

The Claims Administrator received two requests for exclusion.  Murasso Decl., ¶23; Park Decl., ¶¶17, 46.  The small number of exclusion requests supports approval. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing

4.86% of class supports settlements' approval); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement).

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. The lack of objections and the small number of requests for exclusion support final approval.

### F.    The Settlement Meets the Remaining Rule 23(e)(2) Factors.

#### 1.    The Proposed Method for Distributing Relief Is Effective.

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which Plaintiffs and the Claims Administrator duly executed. As the Court directed, the Claims Administrator mailed a Postcard Notice to all those who could be identified with reasonable effort and published the Summary Notice in *Investor's Business Daily* and online in *PR Newswire* on January 29, 2024. Murasso Decl., ¶13 and Exs. C and D thereto. The Notice notified Settlement Class Members of the Settlement and directed them to a website where the Claims Administrator posted key documents including the Stipulation, Long Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, Ex. A.

Settlement Class Members are to complete a standard claim form that requests the information necessary to calculate claims pursuant to the Plan. The Settlement website also allowed Settlement Class Members to file their claims electronically.

#### 2.    The Proposed Award of Attorneys' Fees is Appropriate.

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the

Fee Brief, Lead Counsel seek an award of attorneys' fees of 28% of the Settlement Amount, plus interest, and expenses of $90,000. This fee request, fully disclosed in the Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, part III(C)(5).

Plaintiffs also request $5,000 each, or $10,000 in total, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class. Plaintiffs supervised and engaged with Lead Counsel during litigation and throughout settlement negotiations and kept abreast of developments in this case and with loanDepot generally. Plaintiffs spent significant time representing the Settlement Class. Plaintiffs' request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. *See* Fee Brief, part V.

### 3. The Parties Have No Other Agreements Besides Opt-Outs.

Rule 23 requires disclosure of any agreement made in connection with the proposed Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the Stipulation (ECF No. 112, ¶36), Proposed Order (ECF No. 112, Ex. A at 1), and in the Notice (ECF No. 112, Ex. A-1, ¶77, the Parties entered into a Supplemental Agreement giving Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares opt out. Only the agreement's exact terms—specifically, the number of shares that trigger the termination right— have not been disclosed to Settlement Class Members. This poses no obstacle to final approval. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair"). Defendants did not exercise their termination option.

**4.** **There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably.**

Rule 23 requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan determines how the money is to be distributed to Authorized Claimants. The Net Settlement Fund is to be distributed *pro rata* to each Settlement Class member who submits a valid claim based on their Recognized Losses. Lead Counsel developed the Plan in consultation with Plaintiffs' damages expert, and the Plan closely tracks the theory of the case. Park Decl., ¶20. The Plan will determine Plaintiffs' recovery just like every other Settlement Class Member, so Plaintiffs receive no preferential treatment.

**G.** **The Court Should Approve the Plan of Allocation.**

The Court preliminarily approved the Plan, which was detailed in the Notice. Plaintiffs now seek final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metrics as settlements: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold loanDepot securities, including whether the claimant's purchases were purchased before expiration of a post-IPO lock-up period for non-registered loanDepot securities. Because Plaintiffs' claims under the Securities Act—which do not require proof of scienter and do not have loss causation as an element of the claims—apply only to shares registered by the Registration Statement, the Plan of Allocation increases losses on purchases of such

shares by 25%, reflecting Lead Counsel's determination that such claims are less difficult and risky to prove. Park Decl., ¶22; Murasso Decl., Ex. D. Plaintiffs engaged a damages consultant to assist in developing a plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner.  Park Decl., ¶22.  *See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims.").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common."  *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (plan of allocation was "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares").  Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognized loss as calculated in accordance with the Plan.  Park Decl., ¶21. No Settlement Class Member has objected to the Plan.  Murasso Decl., ¶24; Park Decl., ¶¶16, 46.  The Plan fairly compensates Settlement Class Members and should be approved.

## V.    NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS.

Plaintiffs provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved.   In total, 15,618 potential Settlement Class Members were mailed a Postcard Notice.  Murasso Decl., ¶12.  The Claims Administrator also published the Court-approved Summary Notice in *Investor's Business Daily* and online in *PR Newswire* on January 29, 2024.  *Id.*, ¶13

and Exs. C and D thereto. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶¶14-16. The notice plan executed here directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the Parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-3 (S.D. Cal. Feb. 19, 2020); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI. CONCLUSION

For the foregoing reasons, the Court should (a) finally certify the Settlement Class; (b) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan as fair, reasonable, and adequate.

1
2    Dated: March 15, 2024                    **POMERANTZ LLP**

3                                            By: _s/ Jonathan D. Park_
4                                            Jeremy A. Lieberman
                                             jalieberman@pomlaw.com
5                                            Jonathan D. Park (_Pro Hac Vice_)
6                                            jpark@pomlaw.com
                                             600 Third Avenue, 20th Floor
7                                            New York, New York 10016
                                             Telephone: (212) 661-1100
8                                            Facsimile: (212) 661-8665
9
10                                           Jennifer Pafiti
                                             jpafiti@pomlaw.com
11                                           1100 Glendon Avenue, 15th Floor
12                                           Los Angeles, California 90024
                                             Telephone: (310) 405-7190
13
14                                           _Counsel for Lead Plaintiff Arthur Gary_
                                             _LaFrano, Additional Plaintiff Adam_
15                                           _Doban, and Lead Counsel for the Class_
16
                                             **THE SCHALL LAW FIRM**
17
18                                           Brian Schall, Esq. (SBN 290685)
                                             brian@schallfirm.com
19                                           2049 Century Park East, Suite 2460
20                                           Los Angeles, California 90067
                                             Telephone: (310) 301-3335
21
22                                           _Additional Counsel for Lead Plaintiff_
                                             _Arthur Gary LaFrano and the Class_
23
24
25
26
27
28

24

## CERTIFICATE OF SERVICE

I, Jonathan D. Park, hereby declare under penalty of perjury as follows:

I am Of Counsel at Pomerantz LLP, with offices at 600 Third Avenue, New York, New York 10016. I am over the age of eighteen.

On March 15, 2024, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

The undersigned counsel of record for Plaintiffs also certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.


Executed on March 15, 2024.


*s/ Jonathan D. Park*
Jonathan D. Park
