# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR GARY LAFRANO and ADAM DOBAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>LOANDEPOT, INC. et al.,<br><br>Defendants. | CASE NO. 8:21-cv-01449-JLS-JDE<br><br>**ORDER: (1) GRANTING CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 133); AND (2) GRANTING IN PART CLASS COUNSEL'S MOTION FOR ATTORNEY FEES, COSTS, AND CLASS-REPRESENTATIVE SERVICE AWARDS (DOC. 135)** |

Before the Court are two motions filed by Class Counsel: one for final approval of a class action settlement and another for attorney fees, costs, and class-representative service awards. (Final Approval Mot., Doc. 133; Final Approval Mem., Doc. 134; Fees Mot., Doc. 135; Fees Mem., Doc. 136.) Defendants did not oppose either motion. (*See* Statement of Non-Opp. re: Final Approval Mot., Doc. 139; Statement of Non-Opp. re: Fees Mot., Doc. 140.) One class member, Eljon Lako, objected to the Settlement Agreement, and Class Counsel replied. (Lako Objection, Doc. 141; Reply, Doc. 143.)

Having reviewed the papers, held a final fairness hearing, and taken the matter under submission, the Court (1) GRANTS the motion for final approval; and (2) GRANTS IN PART the motion for attorney fees, costs, and class-representative service awards. The court awards $875,000 in attorney fees—representing 25% of the Settlement Fund. The Court awards the requested $90,000 in litigation costs and the requested $5,000 class-representative service award for each of the two Named Plaintiffs ($10,000 total).

## I.    BACKGROUND

Plaintiffs filed a class action on behalf of persons and entities who purchased or acquired shares of loanDepot's Class A common stock pursuant or traceable to loanDepot's Registration Statement issued in connection with its initial public offering ("IPO") and who purchased or acquired shares of loanDepot's common stock from March 16, 2021, through September 22, 2021. (Amended Consolidated Class Action Complaint ("CCAC"), Doc. 73 ¶ 1.) loanDepot is an independent non-bank retail mortgage lender that provides residential and refinance loans and personal loan products to borrowers in the United States. (*Id.* ¶ 13.) The lawsuit names as Defendants loanDepot, several loanDepot officers and directors, and the underwriters of loanDepot's IPO. (*Id.* ¶¶ 29–41.)

Plaintiffs allege that Defendants violated Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. (*Id.* at ¶¶ 149–224.) Plaintiffs contend that Defendants made false or misleading statements obscuring the following three alleged features of loanDepot's business: (1) that loanDepot closed

loans without the documentation required by statutes, regulations, and contracts; (2) that loanDepot improperly collected double daily interest from refinance borrowers and, upon discovery of the erroneous double collection, made the decision to refund customers only in states with active attorneys general; and (3) that loanDepot experienced declining gain-on-sale margins as the IPO approached. (*Id.* at ¶¶ 55–121.)

In May 2023, the parties participated in a one-day mediation. The mediation was unsuccessful, but the parties continued to negotiate with the mediator's assistance over the following weeks. Eventually, the mediator proposed a settlement of $3.5 million and, in June 2023, the parties accepted and memorialized such an agreement. (Conditional Prelim. Approval Order, Doc. 126 at 4.)

The Settlement Agreement establishes an all-in Settlement Fund of $3.5 million— meaning that any attorney fees, litigation costs, and class representative service awards that the Court awards will be deducted from the Settlement Fund. (Settlement Agreement, Doc. 112, Ex. A ¶¶ 1(vv), 8–9.) After those deductions are made, the remainder of the Settlement Fund shall be distributed on a pro rata basis to class members who have submitted a valid claim. (*Id.* ¶¶ 21–26.) Class Counsel developed the Settlement Agreement's Allocation Plan by working with their damages expert. (Final Approval Mem. at 28; Park Decl., Doc. 137 ¶¶ 20–22.) The Allocation Plan assigns price-inflation figures that vary depending on when Class Members purchased their shares of loanDepot stock. Those price-inflation figures are reflected in the Long Notice disseminated to potential Class Members. (Long Notice, Doc. 138-4 at 11–14.)

In July 2023, Plaintiffs moved for preliminary approval of a class action settlement. (Preliminary Approval Mot., Doc. 109.) In December 2023, the Court conditionally granted the motion—requiring submission of a supplemental counsel declaration and a revised notice packet that more closely tracked the Federal Judicial Center's template notice forms for securities class actions. (Conditionally Prelim. Approval Order at 9, 19, 22.) After receiving the requested materials and finding that they addressed the Court's

concerns, the Court preliminarily approved the settlement. (Prelim. Approval Order, Doc. 129.) At the preliminary approval stage, the Court certified the Class for settlement purposes, appointed Jonathan D. Park of Pomerantz LLP as Class Counsel, concluded that the then-assessable *Staton* factors weighed in favor of approval of the settlement, found no signs of collusion, and approved the form and method of notice. (Conditional Prelim. Approval Order at 6–22; Prelim. Approval Order ¶¶ 7–8.) Class Counsel now moves for final approval and attorney fees, litigation costs, and class-representative service awards. (*See generally* Final Approval Mot.; Atty. Fees Mot.)

## II. CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

In its preliminary approval orders, the Court found that the criteria required by Federal Rule of Civil Procedure 23(a) were met and certified the Class under Rule 23(b)(3) for settlement purposes only. (Conditional Prelim. Approval Order at 6–11; Prelim. Approval Order ¶ 5.) Nothing since the Court's preliminary approval orders suggests that the Court should depart from its previous conclusions regarding the existence of a valid class. The Court therefore incorporates its prior class certification into the current Order.

## III. FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

Before approving a class action settlement, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To do so, the Court "must consider a number of factors, including: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant ; and [8] the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each

individual case." *Officers for Just. v. Civ. Servs. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (cleaned up).

Additionally, where, as here, "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that the settlement is not "the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947 (citation omitted). Such signs include: (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (citations omitted).

In its preliminary approval order, the Court evaluated the *Staton* factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (Conditional Prelim. Approval Order at 11–19.) The Court determined that the following factors weighed in favor of approval: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; and (5) the extent of discovery completed and the stage of the proceedings. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties, noting that the Settlement Agreement was the result of a mediation held before a private meditator. (*Id.* at 19.) The Court sees no reason to depart from its previous conclusion as to the above *Staton* factors or the lack of signs of collusion. The Court incorporates its analysis from its previous order into this Order. (*See id.* at 13–15.)

At the time of preliminary approval, the Court could not yet assess the views and experience of Class Counsel, as it had not received declarations detailing Class Counsel's experience; nor could the Court assess Class Members' reactions to the proposed Settlement Agreement, as Notice had not yet been disseminated. The Court now assesses those two factors and concludes that they support approval of the Settlement Agreement.

### A. Views and Experience of Class Counsel

The Court appointed Jonathan D. Park as Class Counsel. Park has litigated securities and other complex class actions for over a decade. (Park Decl., Doc. 127 ¶¶ 13–14; Park Biography, Doc. 127-7 at 3; Prelim. Approval Order ¶ 7.) Given Park's substantial experience litigating similar cases and his representations regarding the favorability of the Settlement Agreement compared to continued litigation, the Court finds that this factor supports approval of the Settlement Agreement.

### B. Reaction of the Class

From 15,618 potential Class Members, Class Counsel received just two valid requests for exclusion and one objection. (Reply at 7–8; *see* Lako Objection.) This miniscule number of exclusions and single objection "raises a strong presumption that the terms of [the] proposed class settlement are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citations omitted). Moreover, the Court finds that Lako's objection does not call into question the adequacy of the Settlement Agreement, let alone rebut "the strong presumption" of approval raised by the dearth of exclusion requests and objections. *Id.*

As an initial matter, many of the arguments in Lako's objection were raised at the preliminary-approval stage and rejected by the Court. Lako "specifically incorporates" his prior argument that "several aspects of [Plaintiffs' damages] report[s] were problematic." (Lako Objection at 3–5). But the Court already concluded that, although "Lako quibbles with several aspects of the [damages reports], . . . none of Lako's arguments undermine the reasonableness of the settlement." (Conditional Prelim. Approval Order at 16.) The Court

6

explained that the Nye Expert Report reasonably focused only on corrective-disclosure dates with next-day statistically significant declines and reasonably omitted Section 11 damages for certain time periods. (*Id.* at 17–18.) Moreover, the Court explained that Class Counsel reasonably selected comparator settlements from those described in the Cornerstone Research Report re: Securities Class Action Settlements. (*See id.* 17–18.)

The new arguments raised in Lako's objection are to a similar effect. Lako critiques several aspects of the Settlement Agreement's Allocation Plan, but Class Counsel provides a reasonable basis for each challenged aspect. Lako objects that the Allocation Plan assigns $2.29 of price inflation to a certain sub-period even though the Nye Expert Report did not assign any price inflation to that period for Plaintiffs' 10(b) claim. (Lako Objection at 6.) But the Nye Report simply assigned no *section 10(b)* price inflation to that period because the *section 11* damages for that period were higher, Nye was focused on the maximum recovery for each period, and Plaintiffs are not entitled to duplicative recoveries across claims. (Reply at 6–7.) Similarly, Lako objects that the price-inflation figures contained in the Nye Report submitted at the preliminary-approval stage "do not seem to have sufficient correlation" with the price-inflation figures contained in the Class Notice and Settlement Agreement's Allocation Plan. (Lako at 7.) By this, Lako appears to be suggesting that the price-inflation figures in the Allocation Plan should exactly match the figures in the Nye Report. But the Nye Report calculated the *maximum damages*, while the Allocation Plan distributes the $3.5-million *Settlement Fund* to Class Members on a pro rata basis. Given the calculations' different purposes, the two sets of price-inflation figures necessarily must differ. (*See* Reply at 6.)

Lako also criticizes Class Counsel for assigning different per-share price inflation figures to the various sub-periods instead of calculating per-share price inflation using Nye's alternative model that assumed constant price inflation over the entire Class Period. (Lako Objection at 6; *see* Nye Report, Doc. 114-4 at tbls. 2 & 3.) But class counsel are entitled to "make[] interclass distinctions based upon, *inter alia*, the relative strengths and

7

weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'" *In re China Intelligent Lighting & Elecs., Inc.*, No. CV 11-2768 PSG (SSX), 2015 WL 12765018, at *6 (C.D. Cal. Mar. 9, 2015) (citation omitted).

      Finally, Lako argues—without citing any case law—that the notice provided to potential Class Members violated due process because it did not inform Class Members of the maximum potential damages calculated in the Nye Report. But courts, when presented with similar arguments, have rejected them. *See, e.g.*, *Hendricks v. Ference*, 754 F. App'x 510, 512 (9th Cir. 2018) ("Here, the notice included the total amount of the settlement and the formula that would be used to determine individual recoveries. This information was sufficient to satisfy Rule 23 and due process."). Where the class is given "a reasonable summary of the status of the litigation[] and class members could easily acquire more detailed information" by contacting Class Counsel, "[d]ue process requires no more." *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1153 (8th Cir. 1999). The notice here provided Class Members with a description of the action, the Allocation Plan, and the total amount of the Settlement Fund; Class Counsel was also reachable, including through a settlement website established for this action. Therefore, the notice disseminated to Class Members in this case satisfied due process.

* * *

      In light of the above, the Court finds that the views of Class Counsel and the reaction of the Class support approval of the Settlement Agreement. Having found in its previous order that the other *Staton* factors support approval, the Court now GRANTS FINAL APPROVAL of the class action Settlement Agreement.

## IV.   ATTORNEY FEES

      Class Counsel requests $980,000 in attorneys' fees, which represents 28% of the settlement fund. (Atty. Fees Mem. at 1.) The court GRANTS IN PART Plaintiffs' request—awarding attorney fees but decreasing the award to $875,000, which represents 25% percent of the Settlement Fund in line with the Ninth Circuit's benchmark.

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. In the Ninth Circuit, the benchmark for a fee award in a common fund case is 25% of the recovery obtained. *See id.* at 942.

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

### A. Results Achieved

Class Counsel achieved a settlement that represents about 11% of Defendants' damages exposure, and Class Counsel provided the Court with a Cornerstone Research report estimating that the median recovery in 2022 for securities actions with damages exposure between $25 and $74 million was about 8.5% of the exposure. (*See* Conditional Prelim. Approval Order at 5; Atty. Fees Mem. at 14 & n.2). Because Class Counsel obtained a recovery in line with the median recovery in similar actions, this factor does not support an upward departure from the 25% benchmark.[1]

---

[1] In this action, the damages exposure was about $30 million—meaning it fell at the low end of the rather large category described in the Cornerstone Research report of cases with damages exposure between $25 and $74 million. (*See* Nye Report ¶ 23.) The median (footnote continued)

### B. Risk of Litigation

Class Counsel argues that the risk undertaken in prosecuting this action counsels in favor of an upward departure from the benchmark. (Fees Mem. at 14–16.) Class Counsel argues that securities litigation is particularly difficult and more generally that Plaintiffs would have "faced significant risks of continued litigation beyond the pleading stage, such as obtaining class certification, conducting lengthy and expensive fact and expert discovery, surviving Defendants' anticipated motion for summary judgment, winning at trial, and defeating any post-trial motions or appeals." (Fees Mem. at 14–16.) But Class Counsel's securities-specific argument, if accepted, would carve out all securities class actions from the Ninth Circuit's benchmark; yet neither Congress nor the Ninth Circuit has suggested that such a carve out is appropriate. *See* 15 U.S.C. § 77z–1(a)(6) (provision entitled, "Restrictions on Payment of Attorneys' Fees and Expenses": "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). And Class Counsel's more general argument, if accepted, would render the Ninth Circuit's benchmark a nullity, as that argument describes the high-level risks present in virtually all class actions. Accordingly, this factor does not weigh in favor of an upward departure from the 25% benchmark.

### C. Skill Required and Quality of Work

Class Counsel provided quality work—including litigating a motion to dismiss and participating in mediation. Class Counsel, and Pomerantz LLP more broadly, has experience litigating securities class actions. And as a general matter, the Court is satisfied with the manner in which Class Counsel conducted this litigation. Ultimately, the Court

---

recovery for actions with up to $25 million damages exposure was 11.1%. (Report re: Securities Settlements, Doc. 114-3 at 10.) There is no reason to believe that the 8.5% recovery in actions with $25 to $74 million damages exposure is more indicative of the typical recovery in $30 million actions like this one than the 11.1% median recovery in actions with up to $25 million damages exposure.

concludes that the quality of Class Counsel's work was commensurate with what is typically required in successfully litigating a complex class action. Accordingly, this factor does not weigh in favor of an upward departure from the benchmark.

### D. Contingent Nature of the Fee

Class Counsel invested 809.37 hours in this case and have received no compensation for their efforts on behalf of the Class. (Fees Mem. at 17–18, 21; Time Records, Doc. 137-2 at 7.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). However, standing alone this factor does not justify an upward departure from the benchmark. *See, e.g., Clayton v. Knight Transp.*, 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging that the contingent nature of the fee "is an important factor," but declining to grant an upward departure where "the risks associated with this case are no greater than that [sic] associated with any other [similar action]."). Here, the Settlement was reached after about a year-and-a-half of litigation. Put differently, this is not a case where Class Counsel invested years in the case without assurance of compensation. Accordingly, this factor does not weigh strongly in favor of an upward departure from the benchmark.

### E. Lodestar Cross-Check

The Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their [attorney fees] calculations against a second method." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 993–94 (9th Cir. 2023) (citation omitted). Therefore, "[c]ourts commonly—even after having decided to utilize the percentage-of-recovery method—perform a 'lodestar cross-check' by comparing the percentage-of-recovery figure with a rough calculation of the lodestar to assess the reasonableness of the percentage award." *Brooks v. Life Care Ctrs. of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015) (cleaned up).

To calculate the lodestar, the Court must first determine whether the hourly rates sought by counsel are reasonable and then multiply the rates by the reasonable number of attorney and staff hours billed on the case. "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). In determining reasonable hourly rates, courts may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, the time records reflect that attorneys and staff spent 809.37 hours on this matter. (Fees Mem. at 21; Time Records at 7.) Class Counsel proposes hourly rates of $375 for paralegals, $550 for an associate, $775 for an of counsel, and $1,325 for a managing partner. (*See generally* Time Records.) Based on these rates, Class Counsel reports a lodestar of $639,009.75. (*Id.* at 7.)

That the lodestar—even accepting Class Counsel's hours and rates at face value—is *below* the benchmark further supports the Court's conclusion that this case does not call for an upward departure from the benchmark.[2] Arguing that the cross-check supports an upward departure, Class Counsel notes that his request of $980,000 in fees represents about a 1.5 multiplier of the lodestar. (Fees Mem. at 21.) But courts assess the same factors when determining whether to an award an upward departure from the benchmark and whether to apply a positive multiplier to a lodestar figure. Since the Court found that the *Vizcaino* factors do not support an upward departure, it similarly finds that they do not support a positive multiplier.

---

[2] The Court cannot assess the reasonableness of these rates because Class Counsel's declaration lacks information about prevailing rates in the legal community for similar work. (*See* Park Decl. ¶¶ 33–40.) Moreover, the timekeepers' rates are uniform throughout the duration of the case (*see generally* Time Records), so the Court cannot tell if Class Counsel provided timekeepers' current rates to all work performed.

12

\* \* \*

To summarize: The *Vizcaino* factors do not warrant an upward departure from the 25% benchmark that the Ninth Circuit has set for common-fund cases, and the lodestar cross-check further supports adhering to that benchmark. Accordingly, the Court awards Class Counsel 25% of the Settlement Fund, which amounts to $875,000.

## V. Litigation Costs

Class Counsel request $90,000 in litigation costs, the maximum allowed under the Class Notice distributed to Class Members. (Fees Mem. at 24.) Class Counsel incurred $109,390.89 in expenses. (Litigation Costs, Doc. 137-3.)

Class Counsel are entitled to "reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client." *Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) (citations omitted); *see also* 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). The Court GRANTS Class Counsel's request for litigation costs and awards Class Counsel $90,000 in litigation costs.

## VI. Class-Representative Service Awards

Class-representative service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). "[A]s a general matter, $5,000 is a reasonable amount" for a class-representative service award. *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012); *see also Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) ($5,000 service awards are "presumptively reasonable"). Here, Class Counsel requests a service award of $5,000 for each of the two Named Plaintiffs. (Fees

Mem. at 25.) The Court GRANTS Class Counsel's request for these presumptively reasonable service awards.

## VII. CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable. Moreover, the Court finds that the settlement is not the product of collusion. Accordingly, the Court GRANTS the motion for final approval of a class action settlement.

The Court also GRANTS IN PART the motion for attorney fees, litigation costs, and class-representative service awards. The Court awards $875,000 in attorney fees, $90,000 in litigation costs, and a class-representative service award of $5,000 to each of the two Named Plaintiffs ($10,000 total).

Class Counsel is ORDERED to file a proposed final judgment within **five (5) days** of the entry of this Order.

DATED: May 19, 2024

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE